EXHIBIT PN 1 of 5

# EXHIBIT PN

IN THE CIRCUIT COURT OF THE
FOURTH JUDICIAL CIRCUIT, IN
AND FOR DUVAL COUNTY, FLORIDA

CASE No.: 16-2010-DR-10403-FM

IN RE: The marriage of
MOHAMED SALEH,
                 Husband

and

GRACIELA SALEH,
                 Former Wife.



FILED AUG 29 2011
CLERK CIRCUIT COURT

## ORDER DETERMINING VALIDITY AND ENFORCEABILITY OF ANTENUPTIAL AND POSTNUPTIAL AGREEMENTS

THIS CAUSE came before the Court for determination of the enforceability of two agreements purporting to govern the parties' affairs in the event of divorce, one of which was executed by them just before their wedding and the other about nine years later. The Court received exhibits and testimony and heard the arguments of counsel. The authenticity of the agreements and the parties' formal assent to them were not contested.

The parties first discussed the possibility of concluding an antenuptial agreement in December 1995. They executed such an agreement in Jacksonville on October 21, 1996 and left for Africa on the 24th. The parties were married on or about October 27, 1996. The wedding was a multiday event held in Eritrea in accordance with the Husband's ancestral customs. On October 21, 2005 they executed a second agreement which modified the 1996 agreement in some respects and in all other respects reaffirmed it.

1

The 1996 agreement contains recitations and acknowledgments of full disclosure of all pertinent information by and to each party, of voluntariness and freedom from duress, and of each party's access to independent legal counsel and his complete understanding of the rights established and extinguished under the contract. The agreement disposes of most or all of the rights and obligations which might be at issue in a dissolution action, and includes a severability clause. A brief statement of each party's income, assets, and liabilities is attached to the document. The overall effect of the 1996 agreement is to preserve the parties' individual and separate financial lives, abjuring the usual economic incidents of marriage not expressly adopted therein.

Under this agreement, the Wife was guaranteed or waived durational alimony in specified amounts depending on the length of the marriage and her individual income at the time of payment. She might have received no alimony at all; the total payable to her was not to exceed $12,000.

The 2005 agreement includes recitations, acknowledgments, and financial statements similar to but more detailed than those of the 1996 agreement. In this agreement, each party expressly disavows reliance on the other's disclosure of assets and liabilities. All portions of the 1996 agreement not specifically amended or abrogated by this instrument continue in effect.


EXHIBIT 2 of 5

This agreement makes detailed disposition of the parties' interests in a number of specified real property assets. Under this agreement, the Wife is unconditionally awarded durational alimony totaling $72,000 to be paid over 3 years.

The parties' written acknowledgments of full disclosure, voluntariness, independent legal advice and understanding of the rights affected by the contracts were corroborated by the trial testimony of the attorneys who advised them at the time of execution of the agreements. In January 2001, the Husband proposed some specific modifications to the 1996 agreement. The Wife rejected his proposal. In assenting to the agreements, the Wife was not subject to undue influence, coercion, or duress.

The parties first formed a lasting acquaintance in January or February of 1995, when the Husband hired the Wife as a receptionist and factotum in his medical office. Her responsibilities from then until well after execution of the 2005 agreement included reviewing the Husband's mail and attending to all his business and personal financial affairs including his taxes, credit cards, and banking. She prepared checks for his signature for payment of his business and personal obligations. At all relevant times, the Husband's financial affairs were to the Wife an open book. She furnished the vast majority of the financial information relied upon by the preparers of the 2005 contract. At the execution of each agreement, each party had in hand a substantially complete and accurate statement of the other's income, assets, and liabilities. In the 2005 contract, the Wife expressly denied all reliance on the Husband's financial disclosures. Because the

3

2005 contract expressly reaffirms and incorporates the unmodified terms of the 1996 agreement, it is necessarily true that her assent to the presently operative portions of the 1996 agreement was not based on any such disclosures. In the execution of the agreements the Wife had the benefit of extraordinary knowledge of the Husband's financial affairs reaching well beyond any notion of full disclosure, and was not defrauded in any way.

While our law establishes presumptions concerning the payment of alimony to a divorced person, under no circumstances is a person guaranteed such relief. Similarly, marital property must in a dissolution be equitably distributed but equity neither demands equality nor dictates that a party share at all in any given asset. Under the agreements, the Wife's entitlement to alimony and its amount are completely insulated from any financial reverses the Husband might suffer during the marriage or in its aftermath. Her share of the specified marital assets, while subject to extinction during the marriage on the same terms as the Husband's, is insulated from all findings of fact and rules of law that might arise during a divorce action: if she loses her interest due to alienation during the marriage, the Husband loses his; if the parties own the assets at the commencement of such an action, her share cannot be reduced or eliminated. In sum, the agreements guarantee to the Wife substantial benefits which would otherwise be doubtful and contingent and are in these and other particulars quite reasonable. They are fair.

It is thereupon **ORDERED** and **ADJUDGED** that the said agreements are valid and binding and will to the extent of their terms be enforced by the Court.

**DONE** and **ORDERED** in chambers at Jacksonville, Duval County, Florida this 29th day of August, 2011.

*/s/ J. Merritt*
CIRCUIT JUDGE

copies to
D. Mason, Esq
S. Elferin, Esq