United States District Court
Middle District of Florida
Jacksonville Division

MOHAMED O. SALEH ET AL.

   *Plaintiff,*

V.              No. 3:17-CV-1465-J-34PDB

STATE OF FLORIDA ETC.,

   *Defendants.*

---

## Report and Recommendation

In 2011, plaintiff Mohamed Saleh was convicted of a misdemeanor in Nevada in connection with prescribing controlled substances to patients and thereafter was terminated from participating in the Florida Medicaid program and unable to renew his Florida medical license. Now proceeding without a lawyer and purportedly on behalf of himself, his ex-wife, and his five daughters, he seeks to sue fifteen defendants related to those troubles, contending they have conspired against him to prevent him from renewing his license, sully his reputation, and keep him penniless. Doc. 16. Pending are motions to proceed in forma pauperis and for an ex parte hearing. Docs. 4, 15. This report and recommendation reviews the amended complaint under 28 U.S.C. § 1915(e)(2)(B) and recommends dismissal and termination of the pending motions.

### Background

On December 29, 2017, Saleh filed a two-count, eleven-page, 147-paragraph complaint with twenty-eight exhibits against thirty-three defendants, including former congresswoman Corrine Brown, Doc. 1; a motion for a temporary restraining order, Doc. 2; a motion to appoint counsel and pay $15,000 for initial expenses, Doc.

3; and a motion for leave to proceed in forma pauperis, Doc. 4. The motion for a temporary restraining order concerned a January 8, 2018, contempt hearing in a marriage dissolution action in state court. Doc. 2. The Court denied without prejudice both the motion for a temporary restraining order, Doc. 7, and the motion to appoint counsel and pay $15,000 for initial expenses, Doc. 17.

In the order denying the motion for a temporary restraining order, the Court observed the complaint is "disjointed," "convoluted," and "almost entirely indecipherable" and includes "numerous conclusory allegations and irrelevant facts" and "a rambling litany of unrelated allegations about various defendants and the myriad ways they have harmed him and interfere with dissolution proceedings." Doc. 7 at 2, 3, 12. The Court detailed the pleading standards and found the complaint was a prohibited shotgun pleading. Doc. 7 at 6–10. The Court explained, "Here, where Plaintiff incorporates all of his often irrelevant allegations into each claim, without specifying which facts support the elements of each claim, he falls short of the pleading requirements necessary for successfully stating a claim for relief." Doc. 7 at 8. The Court continued, "Of equal concern is the fact that the Complaint does not clearly set forth which Defendant or Defendants are being sued as to each claim." Doc. 7 at 9. The Court also detailed the law on subject-matter jurisdiction, *Younger* abstention, and the *Rooker-Feldman* doctrine and found the Court could not determine from the complaint if it had jurisdiction, if the claims were frivolous, if he stated a claim on which relief may be granted, and if he was seeking damages from anyone immune from liability for damages. Doc. 7 at 10–13.

The Court struck the complaint and gave Saleh a chance to amend, emphasizing any amended complaint should comply with the pleading standards the Court had detailed (including setting forth a short and plain statement of the claims demonstrating entitlement to relief) and include "sufficient and relevant detail of the factual basis for each of his claims and how each Defendant is responsible." Doc. 7 at

10. The Court directed him to resources for litigants without lawyers and cautioned him the Court would not rewrite a pleading to find a claim. Doc. 7 at 16–17.[1]

Following a court-approved extension, Doc. 14, Saleh timely filed an amended complaint, Doc. 16. With it, he filed a motion requesting a "pre-trial ex parte hearing with the Magistrate Judge to address a non dispositive matter." Doc. 15 at 1. In that motion, he states he lives in a home appraised at $1.7 million, owns commercial property valued at $1.2 million, and qualifies for a $625,000 mortgage, and yet risks homelessness because he has not paid real estate taxes and has been "blocked" from obtaining the mortgage based on a $460,000 lien by the state judge in the marriage dissolution action. Doc. 15 at 1–2. He thinks the lawyer representing his ex-wife is colluding with the judge and seeks intervention in that action to "stop this madness." Doc. 15 at 2.

## The Amended Complaint

The amended complaint is a seven-count, thirty-page, 234-plus-paragraph complaint with twenty pages of exhibits against fifteen defendants. Docs. 16-1, 16-2, 16-3. The defendants are: the State of Nevada; the Office of the District Attorney for Clark County, Nevada; the Drug Enforcement Administration's ("DEA's") Las Vegas Field Office; Thomas Carroll (Chief Deputy District Attorney for Clark County, Nevada); Kendra Still (Public Safety Agent with the DEA's Las Vegas Field Office); Michael Becker (a lawyer in Las Vegas); the State of Florida; the Florida Agency for Healthcare Administration; the Florida Department of Health; the Florida State Board of Medicine; Horace Dozier (Field Office Manager for the Florida Medicaid Integrity Office); Claudia Kemp (Executive Director of the Florida Board of Medicine); Carmen Gilley (Senior

---

[1]Before receipt of the order denying the motion for a temporary restraining order, Saleh filed an emergency petition similar to the motion. Doc. 8. The Court denied the petition for the reasons it had denied the motion. Docs. 9, 10. He later filed a letter by a witness to the contempt hearing in the marriage dissolution action. Doc. 13-1. The Court struck the letter from the docket and cautioned him and the witness to not file anything not a pleading, motion, or other permitted paper. Doc. 13.

3

Regulatory Specialist with the Florida Department of Health); an "unknown respondent with political influence in Florida and Nevada"; and an "unknown respondent with influence in [the] local legal community."[2] Doc. 16 at 1, 3–5.

In the amended complaint, Saleh includes many conclusions of law and citations to legal authority, omitted here. He alleges these facts.

Saleh has lived in Jacksonville since 1989 and became a United States citizen in 1990. Doc. 16 at 4. From May 2006 to November 2010, he and his family lived in Jacksonville, and he commuted weekly from Duval County, Florida, to Clark County, Nevada. Doc. 16 at 3–4. From 2000 to 2010, his company—The Center for Medicine and Wellness, Inc.—reported earnings of $8,645,902. Doc. 16 at 27.

Between June 2006 and October 2010, Saleh wrote 3,070 prescriptions in Nevada for controlled substances for legitimate patients in a legitimate medical office with proper documentation while holding licenses to practice medicine in Nevada. Doc. 16 at 19. The only thing he was missing was a license to prescribe controlled substances in Nevada. Doc. 16 at 20. He recalls submitting an application and payment for that license but does not recall if he received a response. Doc. 16 at 20.

On January 11, 2011, Saleh was in Las Vegas for a routine disciplinary hearing by the Nevada Board of Pharmacy for infractions relating to writing prescriptions for controlled substances for patients in Nevada without the license to prescribe controlled substances in Nevada. Doc. 16 at 6–7, 19–20. Accompanying him for "daddy time" weekend was his five-year-old daughter. Doc. 16 at 7. On exiting the hearing

---

[2]In the amended complaint, Doc. 16 at 4–5, Saleh alleges domiciles of two doctors named in the original complaint—Sarvam Terkonda, M.D., and Magdalena Averhoff, M.D.—but does not include them in the caption of the amended complaint and states in the amended complaint he is suing only fifteen defendants (adding the two doctors would make seventeen). From those circumstances, the undersigned assumes he did not intend to include them in the amended complaint. Regardless, this report and recommendation would not change if they were considered included as defendants in the amended complaint.

room, DEA agents surrounded him but, on examining a valid DEA license he possessed, apologized and left. Doc. 16 at 20. Then defendant Kendra Still (DEA Public Safety Agent), without a warrant, approached him, handcuffed him (humiliating him in front of his daughter), led him to a conference room 200 feet away, and removed the handcuffs. Doc. 16 at 20; *see* Doc. 16-3 at 1–2 (arrest report). She twice asked if he was intoxicated. Doc. 16 at 20. He repeatedly told her to administer a drug test, but she ignored him. Doc. 16 at 21. That evening, she and a male DEA agent took his daughter to the home of Heather Jahanbin, Saleh's former office administrator who was always drunk and fired for stealing. Doc. 16 at 7, 21. His daughter spent the night with the "shady" former employee or was given to Saleh's ex-wife in violation of an order in the marriage dissolution action. Doc. 16 at 21. The arrest was against instructions given to Still the day earlier by Paul Rozario—a higher ranking DEA Special Agent in the Las Vegas Field Office. Doc. 16 at 6–7.

On March 29, 2011, District Attorney David Roger "essentially dismissed" the charges underlying the arrest. Doc. 16 at 6, 21–22; Doc. 16-3 at 4. Years later, trying to understand why he would have been arrested, Saleh found a summons to him dated January 10, 2011, that commanded him to send the DEA's Las Vegas Field Office copies of medical files of six named patients. Doc. 16 at 21; Doc. 16-3 at 7.

On May 11, 2011, Folio Weekly magazine published a five-page article about Saleh and used a "Faustian" photograph of him on the cover, hurting his reputation. Doc. 16 at 5.

On October 25, 2011, defendant Thomas Carroll (Chief Deputy District Attorney for Clark County, Nevada), filed a criminal information against Saleh for "conspiracy to commit unlawful dispensing of controlled substance (gross misdemeanor)," in which he listed the names of three of Saleh's established patients, in violation of their privacy rights. Doc. 16 at 7–8; Doc. 16-3 at 5–6. Saleh retained defendant Michael Becker with the Las Vegas Defense Group. Doc. 16 at 24. Becker "summoned" Saleh to his office and told him Carroll would reinstate the charges

5

dismissed by Roger unless Saleh pleaded guilty to the gross misdemeanor. Doc. 16 at 22. Saleh did not read the information because he assumed Becker had. Doc. 16 at 22. Neither Saleh nor Becker knew the charge had been changed to the more serious charge of conspiracy. Doc. 16 at 22. Saleh refused to plead guilty because he believed the charge was based on "inane paperwork charges that had already been dismissed six months earlier." Doc. 16 at 23. But Becker told him Carroll had threatened to bring 3,070 felony charges against him unless he pleaded guilty to the single gross misdemeanor charge. Doc. 16 at 23. Becker placed a form in front of him and directed him to sign it, resulting in psychological coercion. Doc. 16 at 25. On October 25, 2011, Saleh pleaded guilty to the gross misdemeanor, understanding he was pleading to "one count of writing a prescription for controlled substances without a Nevada state authorization" and adjudication would be withheld given his clean criminal record. Doc. 16 at 7, 23. He did not know he was pleading guilty to a conspiracy charge. Doc. 16 at 23. He was fined $2,000. Doc. 16 at 23.

On September 10, 2012, defendant Horace Dozier (Field Office Manager for the Florida Medicaid Integrity Office) conducted a formal hearing with employees of defendant Florida Agency for Healthcare Administration without notifying Saleh and terminated him from participation in the Florida Medicaid program. Doc. 16 at 8; Doc. 16-3 at 11–12. The decision was made despite that, on September 12, 2012, the Florida Department of Children and Families—a close affiliate of the Florida Agency for Healthcare Administration—stated it had reviewed Saleh's criminal history and found nothing that would disqualify him from serving in the "North West Behavioral Health" program, which is "90% Medicaid driven." Doc. 16 at 8; Doc. 16-3 at 13.

On December 10, 2012, unknown employees of defendant Florida Department of Health met and denied renewal of Saleh's Florida medical license because of his termination from the Florida Medicaid program. Doc. 16 at 9.

On January 23, 2013, Saleh received a letter from the Duval County Medical Society expressing concerns that the Florida Department of Health had not received

6

his application to renew his medical license and encouraging him to submit the application by January 31, 2013. Doc. 16 at 9. The Duval County Medical Society does not send renewal application reminders; in his thirty years of practice, Saleh has never received a reminder; and he has always waited until the last minute to submit a renewal application to ensure satisfaction of required continuing medical education. Doc. 16 at 9. Saleh contends, "The only conclusion is that somebody at the Department of Health was waiting to receive [his application], and perhaps they became concerned that the application might slip by them and the license renewal by somebody not a member of the conspiracy." Doc. 16 at 9.

In February 2013, an unidentified lawyer for defendant Florida Board of Medicine told Saleh his medical license had been renewed and he could get it at the licensing window on the first floor of the Florida Board of Medicine's building. Doc. 16 at 12. At the window, someone told him to go to defendant Florida Agency for Healthcare Administration's building. Doc. 16 at 12. While he was walking in a hallway, an unknown woman gave him a letter without letterhead or a signature. Doc. 16 at 9; Doc. 16-3 at 14. The letter, dated February 1, 2013, cited Fla. Stat. § 456.0635 and stated the renewal of his medical license was being denied because of "termination for cause" from the Florida Medicaid program.[3] Doc. 16-3 at 14. The letter explained he had twenty-one days from receipt of the letter to petition for an administrative hearing under Fla. Stat. § 120.57.[4] Doc. 16-3 at 14. At the Florida Agency for Health Care Administration, someone told him the agency had nothing to do with his medical license and he should return to the Florida Board of Medicine.

---

[3]Section 456.0635 provides the Florida Department of Health "shall refuse to renew a license … of any applicant if the applicant … [h]as been terminated for cause from the Florida Medicaid program pursuant to [Fla. Stat. § 409.913] unless the applicant has been in good standing with the Florida Medicaid program for the most recent 5 years." Fla. Stat. § 456.0635(3)(c). Section 409.913 governs the Florida Agency for Health Care Administration's oversight of the Florida Medicaid program and includes reasons for termination of participation in the program.

[4]Section 120.57 is part of the Florida Administrative Procedures Act. It provides procedures for hearings that involve disputed issues of material fact. Fla. Stat. § 120.57.

Doc. 16 at 12. He followed the instructions three or four times to no avail. Doc. 16 at 12. He returned to Jacksonville to figure out a way to renew his Florida medical license. Doc. 16 at 12.

In March 2013, Saleh received a notice to appear at a disciplinary hearing before defendant Florida Board of Medicine in Orlando on April 6, 2013, to address his failure to timely report the gross misdemeanor conviction. Doc. 16 at 12, 14. He was perplexed because he had no renewed medical license, and he wrote the board to explain the situation. Doc. 16 at 12. At the end of the hearing, the board gave him a settlement agreement under which he had to pay a $5,000 fine, a reprimand letter was to be placed in his file, and, for a year, he had to practice medicine in Florida under the supervision of M. Farooque, M.D. Doc. 16 at 12. He signed the agreement. Doc. 16 at 12. He recalls a "junior counsel" with the board's General Counsel's Office telling him his Florida medical license had been renewed. Doc. 16 at 13. He believes there was an "invisible wall" between physicians on the board and administrators on the board, and defendant Claudia Kemp (the board's Executive Director) and other administrators kept the physicians "in the dark" about failing to renew his Florida medical license and his resulting lack of income to pay the fine. Doc. 16 at 13. With the assumption his medical license had been renewed, he drove to Tallahassee and went to the licensing window at the board's building. Doc. 16 at 12. No one knew why his Florida medical license had not been renewed in January 2013, and someone told him to return to defendant Florida Agency for Healthcare Administration to remove "the block." Doc. 16 at 12.

Saleh returned to Nevada to reinstate his Nevada medical license, which was inactive as of June 2011. Doc. 16 at 15. The Nevada Board of Medical Examiners found an entry in the National Practitioner Data Bank that he had "relinquished" his Florida medical license, which was not what had happened. Doc. 16 at 15. Like defendant Florida Board of Medicine, the Nevada Board of Medical Examiners conducted a disciplinary hearing to address his failure to timely report the gross

misdemeanor conviction. Doc. 16 at 12. The Nevada Board of Medical Examiners fined him $2,020, ordered him to perform ten hours of continuing medical education on prescribing opioids, and required him to practice for six months in a preceptorship. Doc. 16 at 15. But "feel[ing his] pain," the board and its executive director issued him a Nevada medical license and helped him obtain a controlled-substance license from the Nevada Board of Pharmacy. Doc. 16 at 15. He planned to do the preceptorship at a Veteran's Administration hospital in Nevada, but the hospital withdrew an offer because of the "relinquished" entry in the National Practitioner's Data Bank. Doc. 16 at 15. He finally found a psychiatrist who agreed to the preceptorship if he worked for $3,000 a month ("essentially to be exploited"). Doc. 16 at 15. He took the job and completed the preceptorship, and his Nevada medical license became unrestricted. Doc. 16 at 16.

Saleh returned to Florida to reinstate his Florida medical license. Doc. 16 at 16. Administrative Law Judge Bruce McKibben sent a notice of an administrative hearing to be held on June 26, 2013, on the issue of "Whether [Saleh's] participation in the Medicaid program should be terminated." Doc. 16-3 at 19–20. Judge McKibben continued the hearing to August 5, 2013, and later cancelled it based on an email sent without Saleh's knowledge from Saleh's old email account. Doc. 16 at 18; Doc. 16-3 at 19–20. Another "fraudulent" email had been sent from Saleh's old email account— one indicating he was withdrawing his application to renew his Florida medical license. Doc. 16 at 18. A Jacksonville lawyer is the only other one with access to Saleh's briefcase and password, and Saleh is addressing the matter in a different lawsuit. Doc. 16 at 18.

On June 8, 2017, Saleh appeared before a credentialing committee. Doc. 16 at 16. Sarvam Terkonda, M.D., (the committee chair) informed him he needs to be reinstated with the Florida Medicaid program to have his Florida medical license reinstated. Doc. 16 at 16. On August 14, 2017, Saleh wrote defendant Kemp and

asked her to schedule a hearing before an administrative law judge concerning denial of renewal of his Florida medical license. Doc. 16-3 at 15–16.

In July, October, or December 2017, a notice of an informal hearing was mailed to Saleh. Doc. 16 at 12, 17, 26. Knowing that an informal hearing means there is no disputed issue of fact, he withdrew an application for licensing by endorsement. Doc. 16 at 17. In January 2018, a second notice of an informal hearing was mailed to him. Doc. 16 at 17.

During the first few weeks of February 2018, Saleh traveled to Tallahassee, went to defendant Florida Board of Medicine, and spoke to Shannon Revels (Clerk of the Florida Board of Medicine). Doc. 16 at 17. She thought it would be no problem to have the "relinquished" entry in the National Practitioner Data Bank removed. Doc. 16 at 17. But when he returned two weeks later, Linda McMullen (a lawyer for the Florida Board of Medicine) was with Revels, Revels appeared awkward, and McMullen spoke from a script clearly from defendant Kemp. Doc. 16 at 17. McMullen directed him to defendant Florida Agency for Healthcare Administration to get a letter reinstating him in the Florida Medicaid program. Doc. 16 at 18. He went to the agency building and was told he needs a Florida medical license before reinstatement in the Florida Medicaid program. Doc. 16 at 18.

Saleh did not know defendants Still, Carroll, or Dozier and met Kemp only once (during the June 8, 2017, credentialing hearing). Doc. 16 at 10, 19. Saleh contends, "Hence there must be an unidentified fourth party that came in some way or manner, directly or indirectly to a mutual understanding with [them] to accomplish a common and unlawful plan." Doc. 16 at 10 (internal italics and quotation marks omitted). He contends the arrest, prosecution, termination from the Florida Medicaid program, denial of the renewal of his Florida medical license, and failure to conduct a formal hearing are overt acts of an alleged conspiracy. Doc. 16 at 6, 8, 17, 26.

Saleh purports to bring seven causes of action. Against the State of Nevada, the State of Florida, and the DEA Las Vegas Field Office, he contends the causes of action are based on respondeat superior. Doc. 16 at 1.

For each cause of action, Saleh "re-alleges and incorporates by reference all preceding paragraphs, Jurisdictional and General allegations as though fully set forth herein." *See* Doc. 16 at 6, 11, 14, 19, 22, 24, 26. The first cause of action is against all defendants for "conspiracy against rights [and] deprivation of rights under color of law" and appears to concern his arrest, prosecution, termination from the Florida Medicaid program, and denial of renewal of his Florida medical license. Doc. 16 at 6–11. The second cause of action is against all defendants for "breach of fiduciary duty, deprivation of right to work, psychological oppression, irrevocable devastation of the family, [and] catastrophic loss of income" and appears to concern the hearing before defendant Florida Board of Medicine in Orlando. Doc. 16 at 11–14. The third cause of action is against all defendants for "malignant and negligent breach of fiduciar[y] duty[,] malicious abuse of power, malicious interference with right to work, [and] emotional and psychological oppression" and appears to concern the "relinquished" entry in the National Practitioner Data Bank, denial of renewal of his Florida medical license, and failure to schedule a formal hearing before an administrative law judge on his termination from the Florida Medicaid program. Doc. 16 at 14–19. The fourth cause of action is against all defendants for "unlawful[] arrest and incarceration [and] lesser included offense[s] of kidnapping, public humiliation and defamation, [and] co[n]spiracy" and appears to concern his arrest. Doc. 16 at 19–22. The fifth cause of action is against all defendants for "unlawful[] prosecution and conspiracy" and appears to concern his conviction. Doc. 16 at 22–24. The sixth cause of action is against unspecified defendants for "legal malpractice, criminal negligence and conspiracy" and appears to concern Becker's representation of him in the criminal case. Doc. 16 at 24–26. The seventh cause of action is against unspecified defendants for "unlawful[] 'termination with cause' from Medicaid" and appears to concern failing

11

to schedule a formal hearing before an administrative law judge on his termination from the Florida Medicaid program. Doc. 16 at 26–27.

Saleh contends the defendants' actions have resulted in a "catastrophic loss of income," a "catastrophic change in lifestyle" for his family, and "extreme deprivations, suffering, and devastation of the most important developmental years of his minor daughters." Doc. 16 at 11. For each cause of action, he seeks $4,322,390 in compensatory damages, "special damages in an amount to be determined by proof at trial," "general damages in an amount to be determined by proof at trial," "punitive damages as allowed by law," "Attorney's fees and Costs," "Restitution to be allowed by law," "Declaratory Relief including but not limited to" a decree he "is the prevailing party," and, against the States of Florida and Nevada, the maximum allowed for each plaintiff. Doc. 16 at 28–30.

Besides declarations that he, his ex-wife, and his daughters are entitled to the damages, Saleh seeks declarations that (1) he "has a right to work in the profession of his choice in the state of his choice," Doc. 16 at 14; (2) the Florida Board of Medicine acted maliciously and breached a fiduciary duty owed to him, Doc. 16 at 18; (3) defendant Kemp is a key player in the conspiracy, Doc. 16 at 18; (4) the prosecution against him was willful, wrong, and malicious, Doc. 16 at 23; and (5) defendant Becker is a member of the conspiracy, Doc. 16 at 25–26.

Saleh also seeks an order (1) directing the Florida Department of Health to reinstate his medical license and reinstate him in the Florida Medicaid program, Doc. 16 at 27; (2) directing the Florida Board of Medicine to remove any negative entries about him in the National Practitioner Data Bank (including the entry he had "relinquished" his Florida medical license) and refund the $5,000 fine and license renewal fees he paid, Doc. 16 at 18; (3) directing the State of Nevada to "erase and vacate" the gross misdemeanor conviction or encouraging the "Nevada Criminal Justice System" to remove the "stain" from his record, Doc. 16 at 24; (4) directing the "Nevada Criminal Justice System" to refund bail money he paid, Doc. 16 at 24; (5)

vacating the decision terminating his participation in the Florida Medicaid program, Doc. 16 at 27; and (6) facilitating scheduling of the administrative hearing allegedly continued to August 5, 2013, and ultimately cancelled. Doc. 16 at 18. He also seeks "intervention of the FBI to identify the mastermind of what clearly appears to be a criminal conspiracy." Doc. 16 at 19.

## Law & Analysis[5]

Under 28 U.S.C. § 1915(e)(2)(B), a court "shall" dismiss an action by a plaintiff proceeding in forma pauperis if at any time the court determines the action is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant immune from such relief. 28 U.S.C. § 1915(e)(2)(B). An action is frivolous if "the plaintiff's realistic chances of ultimate

---

[5]Under Federal Rule of Civil Procedure 8(a)(2), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 10(b), a "party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Complaints that do not comply with Rule 8(a)(2), Rule 10(b), or both "are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). The "most common type" is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* The Eleventh Circuit recently held, "When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1293 (11th Cir. 2018). The Eleventh Circuit explained it was deciding and intimating nothing about a party proceeding pro se.

Here, despite the Court's order explaining the pleading rules, the prohibition against shotgun pleadings, and the deficiencies in the original complaint, the amended complaint is a shotgun pleading with each count adopting the allegations of all preceding counts. *See* Doc. 16 at 6, 11, 14, 19, 22, 24, 26. Dismissal of the amended complaint for that reason alone may well be warranted, but given the other grounds for dismissal, the Court need not decide the issue. In the interest of judicial economy, this report and recommendation analyzes the most apparent reasons why dismissal is warranted but not all possible reasons.

success are slight," including if an affirmative defense (for example, the expiration of the statute of limitations) will defeat the action. *Clark v. State of Ga. Pardons & Parole Bd.*, 915 F.2d 636, 640 (11th Cir. 1990) (internal quotation marks omitted). An action fails to state a claim on which relief may be granted if, construing the pleading liberally and applying the Federal Rule of Civil Procedure 12(b)(6) standards, *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008), the pleading fails to allege facts, accepted as true, that state a claim "that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Construing the amended complaint liberally, Saleh appears to attempt to bring 42 U.S.C. § 1983 or *Bivens*[6] claims against all defendants for conspiring to violate his constitutional rights; common law conspiracy claims against all defendants for conspiring to commit unlawful acts against him;[7] a malpractice claim against Becker for breaching a duty owed to him during representation of him in the criminal case against him in Nevada; and Florida Administrative Procedure Act claims against the Florida entities for terminating him from the Florida Medicaid program and failing to conduct a formal hearing before an administrative law judge on his termination from the Florida Medicaid program.[8] Dismissal of any § 1983 and *Bivens* claims is

---

[6]*Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

[7]In Florida, civil conspiracy may be an independent tort. *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006). The elements of a cause of action for civil conspiracy are: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) doing some overt act in pursuit of the conspiracy; and (4) damage to the plaintiff because of acts under the conspiracy. *Philip Morris USA, Inc. v. Russo*, 175 So. 3d 681, 686 n.9 (Fla. 2015). Nevada recognizes a similar tort. *Sutherland v. Gross*, 772 P.2d 1287 (Nev. 1989). Any civil conspiracy claim based on state law would almost certainly fail based on the absence of factual allegations from which an agreement could be inferred.

[8]Florida has detailed laws governing medical licensure and participation in the Florida Medicaid program. *See* Fla. Stat. chapters 409 & 456. Under Florida's Administrative Procedures Act, an agency action dependent on findings of fact unsupported by substantial competent evidence, material errors in procedure, incorrect

warranted for three of the four reasons in § 1915(e)(2)(B) (the claims are frivolous, he fails to state claims on which relief may be granted, and, for some defendants, he seeks monetary relief against them even though they are immune from such relief). With no federal claims, declining to exercise supplemental jurisdiction over the remaining claims—all under state laws—is warranted.

First, to the extent Saleh attempts to bring § 1983 and *Bivens* claims against the defendants for conspiring to violate his constitutional rights, dismissal of the claims is warranted because, even construing the amended complaint liberally, he fails to allege facts to infer a plausible agreement to violate his constitutional rights. Section 1983 provides a federal cause of action against any person who, acting under the color of state law, deprives a person of a federal right. "Conspiring to violate another person's constitutional rights violates section 1983."[9] *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002). "To establish a prima facie case of section 1983 conspiracy, a plaintiff must show, among other things, that the defendants reached an understanding to violate his rights." *Id.* (internal quotation marks and alterations omitted). "The plaintiff does not have to produce a 'smoking gun' to establish the 'understanding' or 'willful participation' required to show a conspiracy, but must show some evidence of agreement between the defendants." *Id.* (internal citation omitted). A *Bivens* claim is analogous to a claim under § 1983, and actions involving § 1983 claims apply to actions involving *Bivens* claims. *Harlow v. Fitzgerald*, 457 U.S. 800, 814–20 (1982). In the amended complaint, Saleh details a series of troubles he has faced, starting with the arrest in Nevada in January 2011, but provides no alleged facts from which to infer a plausible agreement to violate his constitutional rights.

---

interpretations of the law, or an abuse of discretion may be set aside. *Paylan v. Dept. of Health*, 226 So. 3d 296, 298 (Fla. 2d DCA 2017).

[9]A private actor is not subject to liability under § 1983 unless he conspires with a state actor. *Rowe*, 279 F.3d at 1285.

Second, to the extent Saleh attempts to bring § 1983 and *Bivens* claims against any defendant based on respondeat superior (for example, he states the claims against the State of Nevada, the State of Florida, and the DEA Las Vegas Field Office are based on respondeat superior, Doc. 16 at 1), dismissal of the claims is warranted because the claims are frivolous. There is no respondeat superior liability under § 1983 or *Bivens. Iqbal*, 556 U.S. at 676.

Third, to the extent Saleh attempts to bring § 1983 claims for damages against the States of Nevada and Florida and their agencies, dismissal of the claims is warranted because the claims are frivolous or seek damages against parties immune from such relief. States and state officials sued in official capacities are not "persons" subject to § 1983 liability for damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Furthermore, the States of Nevada and Florida and their agencies are immune from § 1983 liability for damages. *Gamble v. Fla. Dept. of Health & Rehab. Servs.*, 779 F.2d 1509, 1512–15 (11th Cir. 1986) (Florida); *Production & Leasing, Ltd. v. Hotel Conquistador, Inc.*, 709 F.2d 21, 21–22 (9th Cir. 1983) (Nevada).

Fourth, to the extent Saleh attempts to bring § 1983 and *Bivens* claims that accrued in Nevada before December 29, 2015, or § 1983 claims that accrued in Florida before December 29, 2013, dismissal of the claims is warranted because, even construing the amended complaint liberally, the claims are frivolous. The statute of limitations for a § 1983 or *Bivens* claim in Nevada is two years. *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989) (§ 1983); *Van Strum v. Lawn*, 940 F.2d 406, 410 (9th Cir. 1991) (*Bivens*). The statute of limitations for a § 1983 claim in Florida is four years. *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003).

Fifth, to the extent Saleh attempts to bring § 1983 and *Bivens* claims against defendants who are domiciled in Nevada and acted only in Nevada, dismissal of the claims is warranted because the claims are frivolous given the evident absence of personal jurisdiction over them. The Due Process Clause of the Fourteenth Amendment constrains a state's authority to bind a nonresident to a judgment of its

16

courts. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). A nonresident must have "certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Minimum contacts concern "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (internal quotation marks omitted). "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). The connection must arise out of contacts the "defendant himself" creates with the state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis omitted). In the amended complaint, Saleh alleges no facts indicating any Nevada defendant directed any action toward the State of Florida. *See generally* Doc. 16.

Under Federal Rule of Civil Procedure 15(a), a court should freely allow a plaintiff to amend his complaint if justice so requires. If a more carefully drafted complaint might state a claim, a litigant proceeding without a lawyer must be given at least one chance to amend the complaint before the court may dismiss it with prejudice. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). But dismissal with prejudice is appropriate if granting leave to amend would be futile. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). Granting leave to amend would be futile if the complaint as amended would still be properly dismissed. *Id.* Here, the Court already gave Saleh a chance to amend. *See* Doc. 7. Declining to give him another chance to amend and dismissal with prejudice of any § 1983 and *Bivens* claims against the defendants is warranted because he has failed to allege facts to state such claims on which relief may be granted, and amendment otherwise would be futile for the same reasons the claims are frivolous or seek monetary damages against defendants immune from such relief.

17

The only causes of action raising federal questions appear to be § 1983 and *Bivens* claims for which dismissal under § 1915(e)(2)(B) is warranted.[10] To the extent Saleh seeks to bring state law claims of civil conspiracy, legal malpractice,[11] or review of Florida agency decisions,[12] declining to exercise jurisdiction over those claims is warranted given the stage of the action and nature of the claims. A district court has supplemental jurisdiction over additional claims if those claims are so related to claims in the action within the original jurisdiction of the court that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a). But a district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1227 (11th Cir. 2002). The dismissal should be without prejudice. *See, e.g., Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997). In deciding whether to decline the exercise of supplemental jurisdiction, a district court

---

[10]Subject-matter jurisdiction in a federal court may be based on federal question jurisdiction. 28 U.S.C. § 1331. Federal question jurisdiction exists for all civil actions arising under the Constitution, laws, or treaties of the United States. *Id.* If § 1983 does not encompass the causes of action asserted, unless some other authority for bringing suit were ascertained, there is no federal question jurisdiction. *Russell v. Redstone Fed. Credit Union*, 710 F. App'x 830, 831 (11th Cir. 2017). Subject-matter jurisdiction may also be based on diversity jurisdiction. 28 U.S.C. § 1332. Diversity jurisdiction exists where the plaintiffs and defendants are citizens of different states, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. There is no diversity jurisdiction here because Florida citizens are on both sides.

[11]The statute of limitations for a legal malpractice claim in Nevada is four years from when the plaintiff is damaged or two years from when he discovered or through use of reasonable diligence should have discovered the material facts constituting malpractice, whichever is earlier. Nev. Rev. Stat. § 11.207. Any legal malpractice claim against Becker for his representation of Saleh during the 2011 criminal action in Nevada almost certainly would be subject to the statute of limitations.

[12]For any claim by Saleh challenging decisions by the Florida Department of Health, the Florida Agency for Healthcare Administration, or the Florida State Board of Medicine concerning his Florida medical license or termination from the Florida Medicaid program, it is unclear from the amended complaint if the claim would be timely or if he exhausted administrative remedies.

should consider factors such as "judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together" when making the ultimate decision of whether to exercise supplemental jurisdiction. *Palmer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1569 (11th Cir. 1994). Because "[s]tate courts, not federal courts, are the final expositors of state law," *Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1553 (11th Cir. 1992), if a court has dismissed all federal claims, it is often justified in dismissing the state claims too, *Baggett*, 117 F.3d at 1353. Here, with no federal claims remaining and given the stage of the action and nature of the state law claims, declining to exercise supplemental jurisdiction over them is warranted.

### Recommendations[13]

I recommend:

1.   **Dismissing** any § 1983 and *Bivens* claims with prejudice;

2.   **Dismissing** any state law claims without prejudice;

3.   **Terminating** the pending motions, Docs. 4 (motion for leave to proceed in forma pauperis), 15 (motion for pretrial ex parte hearing); and

---

[13]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

4.     **Directing** the clerk to close the file.

**Done** in Jacksonville, Florida, on May 23, 2018.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:     Mohamed O. Saleh
       1306 Campbell Ave.
       Jacksonville, FL 32207